# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**ETHEL L. LABRECQUE,**

**Plaintiff,**

**-vs-**                                              **Case No.  6:05-cv-925-Orl-DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

**Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits for the period between October 15, 2002 and October 29, 2004.  During the pending appeal, Plaintiff filed a subsequent application, and in a decision dated November 12, 2005, the SSA found her disabled beginning October 30, 2004, the day after the ALJ's decision.  Doc. No. 21 n.1.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.  Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

# I. BACKGROUND

### A.    Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on April 3 , 2002, alleging an onset of disability on December 15, 1999, later amending it to October 15, 2002. R. 20, 52-55, 313-16.  Her application was denied initially and upon reconsideration.  R. 38-39, 41-42, 317-25.  Plaintiff requested a hearing, which was held on August 12, 2004, before Administrative Law Judge Jose F. Rolon-Rivera (hereinafter referred to as "ALJ").  R. 335-66.  In a decision dated October 29, 2004, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision.  R. 20-26.  Plaintiff timely filed a Request for Review of the ALJ's decision. R. 16.  The Appeals Council denied Plaintiff's request on May 6, 2005.  R. 7-10.  Plaintiff filed this action for judicial review on June 21, 2005.  Doc. No. 1.

### B.    Medical History and Findings Summary

Ethel Lebrecque was forty-eight years old at the time of the administrative hearing.  R. 52, 338.  Plaintiff completed high school and completed technical training as a computer operator.  R. 70, 338. For the two years prior to her disability, Plaintiff worked as a food handler in a sandwich shop part time approximately one and one-half hours per day, five days per week. R. 339-40, 359. In other statements to the SSA, Plaintiff indicated that she worked from October 1987 to December 1999 in various office settings as a computer operator.  R. 64-65, 84, 87-90.  Prior to that, Plaintiff worked as a cashier and waitress in various restaurants.  R. 65, 84.  Plaintiff lives in a home owned by her husband's parents.  R. 345-46.

Plaintiff's medical history is set forth in detail in the ALJ's decision.  By way of summary, Plaintiff complained of shoulder and back pain, tremors, and hypertension, "major fatigue,"

depression, heat intolerance, diarrhea and vomiting, dizziness, weakness, and constant headaches. R. 34, 64, 345, 361-64.  After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from multiple sclerosis, degenerative cervical disc disease with spondylosis, and carpal tunnel syndrome, which were "severe" medically determinable impairments, but not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  R. 21.  The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform the full range of light work, as she could lift no more than twenty pounds occasionally and ten pounds frequently.  R. 24.  In making this determination, the ALJ found that Plaintiff's allegations of total disability were not credible and not supported by the evidence of record.[1]  R. 25, Finding 4.  Based upon Plaintiff's RFC, the ALJ determined that she could perform her past relevant work as a fast food worker, cashier, and computer operator, which are classified as light work.  R. 25.  Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision.  R. 26, Finding 7.

Plaintiff now asserts three main points of error.  First, she argues that the ALJ erred by finding she had the RFC to perform her past relevant work contrary to treating doctors' statements.  Second, Plaintiff contends the ALJ erred by finding that her mental impairment was not severe.  Third, she asserts that the ALJ erred by improperly applying the pain standard and in evaluating her credibility.  All issues are addressed, although not in the order presented by Plaintiff.  For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II.  STANDARD OF REVIEW

---

[1]  Within the body of the decision, the ALJ discredited Plaintiff's reported limitations based on several specific inconsistencies between those limits, medical findings and Plaintiff's stated daily activities. R. 24.

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### III. ANALYSIS

**A.      Severe Mental Impairment**

Plaintiff argues that the medical evidence reflected severe depression which the ALJ rejected as not supported by the objective evidence. R. 22.  In support of her assertion of a severe mental impairment, Plaintiff points to the Psychiatric/Psychological questionnaire completed by Lisa Kelledy, Ph.D., which indicated that Plaintiff had disabling limitations from severe depression. R. 271-78.

At Step 2 of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe.  By definition, this inquiry is a "threshold" inquiry.  It allows only claims based on the most trivial impairments to be rejected.  In this Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.  A claimant need show only that her impairment is not so slight and its effect not so minimal. *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).

The ALJ found that Plaintiff's mental impairment of depression was not "severe" because Plaintiff did not claim a mental impairment at the time of filing on April 3, 2002 and because Plaintiff denied in a report of contact dated September 30, 2002 any mental impairment and stated that she had never been to a psychiatrist or psychologist; Plaintiff denied any mental problem that would impact her ability to work. R. 22 (citing R. 98).  Plaintiff argues that these factors are not relevant because they took place before her amended onset date of October 15, 2002 and the ALJ is charged with making a determination of Plaintiff's disability from the alleged onset date through the date of his

decision, October 29, 2004.  R. 20.  The criteria the ALJ used was relevant to the amended onset date and for a reasonable time thereafter, absent any evidence to the contrary.

Moreover, the ALJ considered and properly rejected the most current evidence prior to the hearing date.  The ALJ discounted the opinion of Lisa Kelledy, Ph.D. who completed a Psychiatric/Psychological questionnaire that indicated she had seen Plaintiff exactly twice – on July 9 and August 9, 2004 – for complaints of depression, because her opinion was not supported with objective findings or progress notes to substantiate the degree of any mental impairment.  R. 22.  The ALJ properly gave no weight to the opinion be cause it appeared to be a report of Plaintiff's subjective complaints rather than based on objective findings.  R. 22.  The ALJ also noted that Plaintiff had testified at the hearing that she had started to seeing a therapist recently and had never been hospitalized for mental reasons.  R. 22.

As the Commissioner points out, Plaintiff's alleged mental impairment did not meet the durational requirement of the Social Security regulations.  To establish disability, a plaintiff must demonstrate that she was unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment expected to result in death or to last twelve or more continuous months. *See Powell v. Heckler*, 773 F.2d 1572, 1576 (11th Cir. 1985).  Dr. Kelledy had only treated Plaintiff twice in the month immediately (July 2004) before completing the questionnaire submitted by Plaintiff's counsel during the August 12, 2004 hearing.  R. 5 (Ex. 18F submitted at hearing); R. 271.  This single month of treatment before the hearing and a couple of months before the ALJ's final decision also undercuts Plaintiff's argument that the ALJ should have recontacted Dr. Kelledy for additional evidence.  In addition, Plaintiff reported working part-time at least as late as January 2004.  R. 309.  Even Dr. Kelledy opined that Plaintiff's mental limitations did not begin before June 2004.  R. 278.  It is apparent that the ALJ carefully considered the medical and other

evidence which supports the ALJ's determination that Plaintiff did not suffer a severe mental impairment prior to October 2004[2].

**B.      RFC and the treating physicians' opinions.**

Plaintiff also challenges the ALJ's finding that she could perform her past relevant work as a computer operator and cashier.  R. 25.  Plaintiff claims that the ALJ should not have found her able to perform her past relevant work in light of limitations assigned by her treating neurologist, Dr. Steingo, and her treating internist, Dr. Meigs.  Plaintiff contends that her treating sources have opined that her multiple sclerosis and mental impairments have imposed functional restrictions sufficient to limit her ability to sit, stand, walk, lift, push, and pull on a full time basis, and that she is limited in her ability understand and remember, sustain concentration and persistence, interact socially, and adapt in a working environment; these are valid and probative evidence of the severity and functional impact of Plaintiff's impairments and should have been weighed accordingly.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments.  20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof.  *Id.*  Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not

---

[2]Notwithstanding the ALJ's finding regarding the time prior to October 2004, Plaintiff's treatment with Dr. Kelledy could be considered in her subsequent application, which resulted in the SSA finding her disabled beginning October 30, 2004. *See* Doc. No. 21 n.1.

-7-

inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

The ALJ gave no weight to the multiple sclerosis impairment questionnaire completed by Dr. Steingo's in April 2004 because he had evaluated the Plaintiff on only two occasions when he completed the questionnaire and his progress notes did not substantiate the severe degree of impairment that he attributed to Plaintiff.  R. 23.  Plaintiff contends that the ALJ should not have rejected the opinion of Dr. Steingo, her treating neurologist, because Dr. Steingo's specialty is in neurology, and his practice is in a clinic specializing in multiple sclerosis.  Plaintiff argues that Dr. Steingo's report of his initial examination of Plaintiff on January 27, 2004 demonstrated that his medical opinion was based on full review of Plaintiff's relevant treatment records dating back to her alleged onset of disability in October 2002 in addition to his examination of Plaintiff.  *See* R. 208-10.

Plaintiff argues that Dr. Steingo's opinion is based on review of Plaintiff's complete relevant medical history since October 2002 because he reviewed outside reports, including MRI scans of the brain from October 2002 and September 2003, MRI of the cervical spine, EMG testing, and laboratory studies ruling out all other possible etiologies that could explain the multiple white matter lesions demonstrated on the brain scans.  R. 208-10.  Plaintiff also contends that the ALJ failed to specifically cite any aspects of "severe degree of impairment unsupported by the progress notes, and Plaintiff argues, Dr. Steingo's opinion is amply supported by repeated clinical testing as well as MRI scans and EMG.  Plaintiff also contends that the ALJ erred in not mentioning the opinion of treating internist, Dr. Meigs, who opined that Plaintiff was "totally disabled" (R. 270, 289) and relying instead

on the irrelevant opinions of reviewing physicians finding Plaintiff able to perform light work in July and September 2002 (R. 141-48, 149-56), even though Plaintiff's onset of disability was amended to October 15, 2002. R. 20. The Commissioner contends that the ALJ did properly evaluate and consider the evidence from Dr. Steingo and Dr. Meigs.

Plaintiff cites to the first CT scan of Plaintiff's brain to assess her chronic hand tremors on September 5, 2002, and the MRI of October 15, 2002, which showed subcortical white matter hyperintensities most profound within the frontal lobes and also present within the parietal lobes. R. 264. However, the September 2002 CT report stated that it was "possible" that the small subcortical white matter lesion in the left frontal lobe was "normal," although multiple sclerosis was also a possibility. R. 266. The October 2002 MRI was not much more conclusive, finding the appearance was nonspecific and *possibilities* included demyelination (multiple sclerosis), but not classic. R. 264. It was also possible that the cause could be lyme disease, vasculitis, lupus, migraines, and sequela of old infection/inflammatory processes. R. 264. In a report dated November 1, 2002 from Broward Medical Center regarding Plaintiff's complaints of cramping in her hands, Dr. Thaker noted that Plaintiff had carpal tunnel syndrome but no clinical evidence of focal neurologic symptoms or findings. R. 185. The ALJ noted Dr. Thaker noted the lesions were not typical of multiple sclerosis and his treatment was to watch Plaintiff and have a repeat scan in a year. R. 23 (citing R. 186). During 2003, Plaintiff also suffered from abdominal symptoms including an ulcer and GERD, as well as a kidney infection and stones. R. 208. Plaintiff also suffered from a fatty liver, with abnormal liver function test results. R. 209. Plaintiff's diagnosis at this point was still uncertain.

Plaintiff did not start seeing Dr. Steingo until January 2004. R. 201, 208-10. Despite the fact that a September 2003 report showed an increased number of white matter hyperintensities compared to the scan of October 2002, Dr. Steingo was still unsure that Plaintiff was suffering from multiple

sclerosis. R. 210. Plaintiff reported experiencing neurological symptoms, but during the actual exam on January 27, 2004, Plaintiff's physical examination revealed intact motor, sensory and reflex functions, demonstrated no facial weakness or sensory loss, and Plaintiff's power was five out of five throughout. R. 208-10. Her cervical spine MRI scan was inconclusive because of poor quality, and the brain MRI scan did not show classical multiple sclerosis. R. 210. Dr. Steingo asked rhetorically in his dictated notes in January 2004: "If this is not multiple sclerosis causing these extensive white matter lesions, what is it?" R. 210. Despite his uncertainty about Plaintiff's condition at that point, less than one month later in a short letter dated February 5, 2004, Dr. Steingo stated *in toto*: Plaintiff "is a patient of ours with multiple sclerosis. Due to this condition she is unable to work. If you have any further questions, please do not hesitate to contact our office." R. 157, 296. Despite his uncertainty about the brain MRI findings, Dr. Steingo also cited this brain MRI as the laboratory and diagnostic test which supported his diagnosis of Plaintiff's MS on a Multiple Sclerosis Impairment Questionnaire completed on April 27, 2004. R. 202. Dr. Steingo diagnosed Plaintiff as having multiple sclerosis and described her prognosis as "guarded." R. 201. Dr. Steingo stated on his June 2004 questionnaire that the earliest date of Plaintiff's symptoms was not before December 2003. R. 207.

On June 21, 2004, Plaintiff reported fatigue, depression, and pain with constant pain and deep muscle aching. R. 282. When her MRI of the spine was repeated in June 2004, it showed Plaintiff had mild degenerative disc disease, with no signal abnormalities identified within the cervical cord to suggest the presence of demyelinating plagues. R. 286. Dr. Steingo said in his notes that day that Plaintiff "is considered to be totally disabled" because "she will be unable to work because of her weakness and fatigue, tremors, and pain." R. 283. However, aside from the upper extremity tremors he noted on exam that day, the remaining factors were subjective descriptions from Plaintiff that she

was experiencing numbness, tingling, tremors and unsteady gait[3].  R. 282.  During the same time

period, in February 2004, a report from Dr. Meigs states that Plaintiff is having muscle spasms, but

literally questions whether they are:  "? due to MS."  R. 294.  In April 2004, Plaintiff reported to Dr.

Meigs that she had gone without her medications for four months.  R. 291.  One aspect of Plaintiff's

physical condition which frustrated Dr. Meigs was Plaintiff's continued daily alcohol intake despite

her diagnosis of having a "fatty liver", abnormal liver results, and a family history of liver problems.

*See, e.g.,* R. 209, 214-16, 219, 222, 259, 298-300, 308.  Dr. Meigs grew so frustrated that Plaintiff

continued to drink alcohol despite his advice to abstain from any alcohol use, that he referred Plaintiff

for alcohol behavior modification in May 2003.  R. 218.  Plaintiff told the counselor she had stopped

drinking.  R. 218.  Obviously, Plaintiff continued to drink based on the 2004 medical records (*see,*

*e.g.,* R. 214) and her testimony at the August 2004 hearing that her doctor told her that she could have

a glass of wine in the evenings if she wanted to.  R. 356.

As additional evidence of the uncertainty of the MS diagnosis prior to mid-2004, Plaintiff was

not prescribed Copaxone[4], which slows the progress of MS (R. 328) during her initial consultation

with Dr. Steingo in January 2004 (R. 210), or in April 2004 when he completed the Questionnaire (R.

205), but not until May 2004.  R. 287.  Later medical records, from November 2004 and March 2005

– which was after the onset date subsequently established by SSA as October 30, 2004 – report a

significant deterioration in Plaintiff's condition.  R. 329.  Plaintiff had been under considerable stress,

which exacerbated her condition, because several family members had died; she was close to a

nervous breakdown.  R. 329 (November 2004).  By March 2005, she reported that her fatigue was

---

[3]The ALJ determination of Plaintiff's credibility is discussed below.

[4]Plaintiff testified that the Copaxone covers her symptoms of vomiting, diarrhea, dizziness, and weakness.  R. 362.

making her spend hours in bed everyday, she had intermittent dizziness followed by nausea and

vomiting, shaking  all the time, and constant headaches, plus decreased coordination and weakness.

R. 330.  In contrast to his two-sentence letter of February 2004, Dr. Steingo wrote a more detailed

letter explaining Plaintiff's symptoms and diagnosis with MS in March 2005:

> Mrs. Wison-Labrecque is a patient of ours with multiple sclerosis.  This patient was
> initially seen in our office on January 27, 2004.  The patient had previously seen other
> neurologists.  They had considered the diagnosis of MS and she was referred for
> further evaluation.  The patient has abnormal MRI scan showing multiple white matter
> hyperintensities consistent with MS. Her course has been one of relapses and
> remissions.  All these factors have led to a diagnosis of MS.
>
> For this condition, Copaxone has been prescribed.  This is an immunomodulating
> medication which slows the progression of MS.  Other medications would be for
> symptomatic treatment . . . [but] she is not able to afford some medications. . . . As a
> result of her above problems she is disabled.  This is further compounded by the fact
> that she has significant anxiety and depression that was evaluated by a psychologist.
> . . .  I expect this to be a permanent condition and that she is unable to engage in
> gainful employment.

R. 328 (March 14, 2005).

The other major factor the ALJ considered in rejecting Dr. Meigs' and Dr. Steingo's (pre-

October 2004) evaluations was that the claimant did not meet the twelve month disability period

requirement of the SSA because she worked sporadically in 2002, 2003, and into 2004.  R. 24, 339-

41.  "Her actions of contemplating work and actually performing work activities for a fee," as a home

computer operator and sub shop cashier, "indicated that she did not view her pain as disabling."  R.

24.  The ALJ noted that Plaintiff reported in a medical questionnaire for Dr. Steingo dated January

27, 2004, that she was still working at home as a computer operator and at the sub shop as a cashier

for one and on-half hour per day.  R. 24, 308-09.  The ALJ's rejection of the treating physicians'

opinions in reference to their pre-October 2004 opinions was based on substantial evidence.  Neither

treating physicians' records support the extreme limitations they reported before mid-2004.  The state

-12-

agency physicians who reviewed the evidence from the 2002 time frame and opined that Plaintiff was capable of light work. R. 141-56. There was no evidence of a significant change in Plaintiff's condition until mid- to late-2004; thus it was not error for the ALJ to rely on the RFC opinions of the non-examining physicians. In addition to the evidence discussed above to refute the treating physicians' opinions of disability, the ALJ also noted that the evidence of record showed that even though Plaintiff had a history of lumbar strain and neck pain (R. 23, 159), medical records from William Gilwa, Plaintiff's treating chiropractor, showed that Plaintiff was treated with massage, traction, and manipulations with good results and a five to seven percent impairment rate. R. 23, 117-21.

Moreover, the ALJ's finding that Plaintiff could perform her past relevant work as a computer operator and cashier was based on substantial evidence. R. 25. As part of his determination of Plaintiff's RFC, the ALJ consulted the Department of Labor's Dictionary of Occupational Titles (DOT) to determine whether Plaintiff had the RFC to perform the type of positions she held as past relevant work. R. 25. The ALJ found that Plaintiff's past work as a fast food worker and cashier were classified at the light exertion level. R. 25. He also found that her work as a computer operator was classified at the light exertion level, although Plaintiff's description of the way she actually performed it was at the sedentary exertion level. R. 25, 87. The ALJ's determination that Plaintiff had an RFC for light work and was capable of resuming her past relevant work as a fast food worker, cashier, and computer operator was based on substantial evidence. R. 25.

**C.      Pain and credibility.**

Plaintiff contends that the ALJ erred in evaluating her pain by improperly evaluating her credibility and finding her subjective complaints not credible, and by failing to state a reasonable basis for the rejection of her testimony.

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, he clearly was aware of the governing standards for evaluating subjective complaints because he cited (R. 22-23) the applicable regulations, 20 C.F.R. §§ 404.1529; 416.929.  *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied").  Moreover, the ALJ complied with those standards.  He obviously determined that plaintiff had an objective medical condition that could give rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that he had to articulate a reasonable basis for his determination.  In that respect, after discussing Plaintiff's RFC, the ALJ stated,

> The undersigned finds that th[e] claimant's statements concerning her impairments and their impact on her ability to work are not credible.  The undersigned noted that the claimant stated at the hearing she [h]as worked in 2002, 2003, and in 2004, although at time sporadically.  R. 349-51.  It is noted that in the medical information questionnaire dated January 27, 2004 the claimant reported that she was still working in her home as a computer operator, and outside as a cashier.  R. 308-09. The claimant is able to drive whenever necessary, attends seminars, goes shopping. performs house chores and cares for her three dogs. R. 349-53.  Although the claimant testified that she last drank over a year ago, Progress note dated May 12, 2004 from the 7ᵗʰ Ave Clinic stated that the claimant admitted to drinking wine every night.  Moreover, the Administrative Law Judge noted that the claimant's testimony was based on her alleged subjective complains of pain, when in fact her symptoms were amenable and responsive to the prescribed medication and exercises.  Based on the evidence and the testimony at the hearing, the undersigned Administrative Law Judge is convinced that

the claimant has some discomfort; however, the claimant's allegations are exaggerated and not credited to the degree that she would be precluded from all work related activity.

The undersigned finds that the claimant did not meet the twelve month disability period requirement of the Social Security Act.  She testified that she worked in 2002, 2003, and in 2004, although at times sporadically.  The evidence shows that the claimant was able to perform basic work activities, including activities she performed in her past work.  Her actions of contemplating work and actually performing work activities for a fee indicated that she did not view her pain as disabling.  The claimant's statements that she sought work and performed a wide range of work activities are inconsistent with her alleged claim of disability.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence).  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff also argues that the ALJ should not have cited her efforts to work in 2002, 2003, and 2004 as a basis for questioning her credibility without addressing Plaintiff's limited earnings during those years; the ALJ also failed to acknowledge that the Social Security Administration has deemed part-time work does not constitute substantial gainful activity.  R. 80.  Plaintiff argues that her continued efforts to attempt to work from 2002 to 2004 demonstrate her continued inability to sustain substantial gainful activity and support her credibility rather than detract from it.  The Commissioner responds that, while this may not have been at the substantial gainful activity level, it does show that Plaintiff was not as limited as she claimed to be.

The ALJ is entitled to consider the claimant's daily activities and course of treatment in evaluating and discrediting her testimony regarding pain and other subjective symptoms. *See* 20

C.F.R. §§ 404.1529; 416.929.  The ALJ specifically considered Plaintiff's daily activities, such as doing light chores, occasional cleaning, feeding her three outside dogs, and driving every week to go shopping, every month to go to multiple sclerosis seminars and also to medical appointments, and that she drove herself to the hearing.  R. 24, 345, 349-53.  Plaintiff argues the ALJ erred in relying on an erroneous interpretation of her most active daily activities, in that she also testified that she spends a typical day resting in her room (R. 352) and she only "occasionally" cleans "the room" without quantifying the meaning of the term "occasionally."  She attested to a more limited interaction with her dogs – that she only feeds them and does not walk or bathe them.  R. 352-54.

However, the ALJ is entitled to assess Plaintiff's credibility based on the medical records and her testimony at the hearing.  The ALJ specifically noted an instance in which Plaintiff was untruthful, in that she testified at the hearing that she last drank over a year ago, but progress notes from the Seventh Avenue Clinic dated May 12, 2004, a mere three months before the hearing of August 12, 2004, stated that Plaintiff reported drinking wine every night, despite her "fatty" liver condition.  R. 24, 298, 356.

The ALJ offered specific reasons for discrediting Plaintiff's subjective complaints, which inconsistencies between Plaintiff's complaints and the medical records, as well as inconsistencies between her statements and her activities of daily living.  These are factors the ALJ is directed to consider. 20 C.F.R. §§ 404.1529; 416.929.  The ALJ's reasons are supported by substantial evidence.

### IV. CONCLUSION

The record in this case includes contrary and conflicting elements. Plaintiff herself proceeds in different ways at different times.  She suffers from a variable but deteriorating condition.  She is, at times, compliant with medical advice and at other times seemingly indifferent to the seriousness

-16-

of her condition.  She has not always been candid about her activities and limitations.  From these discordant sources, the ALJ is charged with drawing inferences and reaching conclusions.  The ALJ's determinations here are not the only ones that could be drawn, but they are a reasoned and reasonable interpretation of the uncertain evidence.  It is in cases such as this one that the mandated standard of deferential review should be fully acknowledged and respected.

Plainly, Plaintiff does not enjoy full health and her lifestyle and activities have been affected by her ailments to some degree from October 2002 to October 2004.  The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act for the time period in dispute.  For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence.  Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on December 12, 2006.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record